ANDREA THEATRES, INC. and E.B.
Cinema Corp., Plaintiffs,

v.

THEATRE CONFECTIONS,
INC., Defendant.

No. 84 CV 4833.

United States District Court,
E.D. New York.

Sept. 23, 1985.

Rosenberg & Tulis, New York City by
Jeffrey L. Rosenberg, Allan E. Mayefsky,
for plaintiffs.

Nixon, Hargrave, Devans & Doyle, New
York City by Frank H. Penski, Mary
Louise Barhite, for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant's present motion to dismiss
plaintiff's complaint calls upon us once
again to determine the delicate question of
whether we should interfere, however
slightly, in a lawsuit first commenced by
the defendant against the plaintiffs for
breach of contract in the Monroe County
Supreme Court wherein the plaintiffs here
(defendants there) interposed as counter-
claims and defenses the identical claims
which they assert here. Since any action
taken by us on this motion might carry
with it the implication that the learned Su-
preme Court Justice to whom the State
Court proceeding has been assigned is not
as qualified to decide whether the identical
counterclaims and defenses should stand or
be dismissed, comity dictates that no such
action should be taken by us absent an
express request therefor from another
such Judge in a prior action to whom any
such questions may also be submitted.

Procedurally, this case is now before the
Court on defendant Theatre Confections,
Inc.'s (hereinafter TCI) motion to dismiss
the complaint of plaintiffs Andrea The-
atres, Inc. and E.B. Cinema Corp. (herein-
after collectively referred to as ATI) pursu-
ant to Rule 12(b)(6), F.R.Civ.P., or, alterna-
tively, to dismiss or stay this action pend-
ing the resolution of an ongoing State ac-
tion involving precisely the same parties.
For the reasons stated below, the Court
grants defendant's motion to stay this ac-
tion.

Defendant TCI is a New York corpora-
tion with its principal offices in Rochester.
Plaintiffs' Complaint, ¶ 6 (hereinafter Pl.
Complt.). TCI's primary businesses in-

volve (1) the provision of "concession packages" which include products to be sold and equipment for the operation of sales in space it leases from entities such as movie theaters, and (2) loans for purposes such as construction to the owners of entities from which it leases space to operate its concession stands. *Id.* at ¶¶ 7, 10. TCI's business ventures are conducted primarily in the northeast and north central United States. *Id.*

Plaintiffs are both New York corporations, owned by the same principals, with their principal place of business in Merrick, New York. Pl. Complt. ¶¶ 4, 5, 21. Each plaintiff is the lessee and operator of a movie theater complex in the greater New York City area; Andrea Theatres leases and operates one in Staten Island, New York; E.B. Cinema, one in Nanuet, New York. *Id.* The principals of plaintiffs also lease and operate several other movie theaters in the same geographic area. *Id.* at ¶ 21.

In February of 1979, plaintiff E.B. Cinema obtained its present ten-year lease in Nanuet for the purpose of constructing a "five-plex" movie theater by the Christmas season of 1979. Pl. Complt. ¶ 14. At the time, plaintiffs estimated the construction would cost approximately $500,000 to $600,000, and they "were unable to obtain all the financing necessary for the planned construction ... from outside banks." *Id.* at ¶ 15.

In September of 1979, TCI agreed to loan $300,000 to plaintiffs for the construction. Pl.Complt. ¶ 19. On September 26, 1979, ATI's principals and TCI signed both a loan agreement for $300,000 and a concession lease agreement covering three other mov-

ie theaters in addition to the two plaintiff theaters, also operated by ATI's principals.

In return for the loan, TCI required various forms of security and collateral; the concession lease agreement being one form. Pl. Complt. ¶ 23. For example, the Concession Lease was to run until September of 1987, but could be automatically extended by TCI "until all monies owed" by ATI's principals to TCI "if any, have been repaid in full." Defendant's Affidavit in Support of its Motion, Exhibit B, Concession Lease Agreement ¶¶ 1, 14 (hereinafter Concession Agreement). Moreover, for an initial period, the Concession Agreement was to be used as a vehicle for paying the loan itself; that is, until a certain fraction of the loan was paid a portion of the proceeds that would otherwise have been paid to ATI's principals as rent for the leased space were to be treated as loan payments. Defendant's Affidavit in Support of its Motion, Exhibit A, Loan Agreement, ¶ 2(b) (hereinafter Loan Agreement).

Ultimately, only $250,000 of the $300,000 that TCI had initially made available under the loan was actually used. Pl. Complt. ¶ 57. However, the Loan Agreement also acknowledged debts owing to TCI under previous loans made by TCI to plaintiffs' principals and theaters operated by them, among them being plaintiff Andrea Theatres, in 1975 and 1976 which had been guaranteed by *inter alia* a concession lease agreement. Loan Agreement, ¶ 8. The aggregate amount owed on these previous loans was acknowledged by plaintiffs' principals to be $148,835.54 as of September 20, 1979.[1]

ATI's principals agreed that this aggregate amount "shall be added to the out-

---

1. According to paragraph 8(a) of the Loan Agreement, an unpaid balance of $106,605.48 was owed by TCI as of September 20, 1979 under a Revolving Credit Agreement dated June 4, 1975, between Henry Goldman (one of plaintiffs' principals), Theatre Service and TCI, the payment of which had been guaranteed by Mi-Ann theatre Corp. (a theater owned by plaintiffs' principals) and Andrea theatres (one of the plaintiffs herein) pursuant to a concession lease agreement dated November 18, 1979 between these two theaters and TCI.

According to paragraph 8(b), Andrea Theatres and Mi-Ann Theatre also entered into a Revolving Credit Agreement with TCI dated November 18, 1975, under which they owed TCI as of September 20, 1979, the sum of $17,971.41.

Finally, according to paragraph 8(c), Andrea Theatres and Mi-Ann Theatre together with some of the principals owed TCI as of September 20, 1979, a past-due balance of $24,259.65 pursuant to a promissory note in the face amount of $17,000 dated February 6, 1976.

standing balance hereunder" (*i.e.*, the 1979 loan) and would be repaid together with interest in the manner set forth under paragraph 2 of the 1979 Loan Agreement "as if said account stated [*i.e.*, the aggregate amount outstanding from the old loans] had been an additional loan borrowed as of the date hereof." Loan Agreement, ¶ 8. By this Court's estimation, then, the total value of the 1979 loan came to nearly $400,000 exclusive of interest.

Under the Concession Lease Agreement, ATI's principals agreed to buy concession products exclusively from TCI for five theaters, two of which are the plaintiffs herein, and TCI was given the exclusive right to sell its products from the space it leased. Concession Lease, ¶¶ 2, 4. In exchange for the lease, TCI was to pay approximately 50% of the proceeds from its sales to plaintiffs' principals as a rental fee. *Id.* at ¶ 3. Plaintiffs' principals were to use its own theater staff at the concession but TCI reserved the right to staff the concession with its own employees under certain circumstances. *Id.* at ¶ 14. During the time that plaintiffs' principals used their own staff, they were to give TCI a weekly accounting for all monies received from the sales of the concessions and make deposits of these monies as well as give TCI a monthly inventory. *Id.* at ¶ 8.

The Concession Lease Agreement also incorporated a previous concession lease agreement entered into on November 18, 1975 between TCI and other theaters operated by plaintiffs' principals, among them Andrea Theatres, and modified that previous agreement where it was inconsistent with the present 1979 agreement. Concession Agreement, ¶ 21.

In the Spring of 1984, plaintiffs allege that they had paid TCI approximately $450,000 and informed TCI that they considered the 1979 loan paid. Pl. Complt. ¶ 60. Plaintiffs further allege that TCI agreed with them but refused to consider the loan repaid unless plaintiffs agreed to extend the Concession Lease Agreement. *Id.* at ¶ 61.

According to TCI, ATI breached both its Loan and Concession Agreements in the Spring of 1984.[2] As a result of this, in June of 1984, TCI sought a preliminary injunction against plaintiffs in New York State Supreme Court, Monroe County, due to plaintiffs' breach of these two agreements. This action is entitled *Theatre Confections, Inc. v. Andrea Theatres, Inc. and E.B. Cinema Corp.*, Index No. 4905/84.

ATI initially filed a general denial dated July 30, 1984, and later amended its answer to assert counterclaims and affirmative defenses for the breaches claiming that TCI had violated New York's criminal and civil usury laws and was improperly withholding guarantees and security instruments given to TCI as collateral for the loans.

In December of 1984, plaintiffs filed the present action against TCI alleging as direct causes of action the previously noted defenses asserted in the State proceeding as well as assertions that TCI had violated federal antitrust law. In January of 1985, plaintiffs were permitted to file a second amended answer in the State proceeding adding as counterclaims and defenses the identical antitrust claims asserted in their federal complaint.

Plaintiffs claim that TCI has violated the Sherman Act, §§ 1 and 2, the Clayton Act, § 3, and New York State's antitrust statute through (1) its "resale price maintenance" of the prices at which it sold the concessions' products to the theater patrons, (2)

---

**2.** More specifically, TCI, in its Memorandum of Law in support of its partial summary judgment motion in State Court, avers that ATI admitted to owing TCI at least $87,494.79 in the Spring of 1984.

To alleviate any possible confusion which might arise from this recitation of the parties' conflicting allegations, the Court notes that its decision to abstain in this matter was made only after a thorough review of the papers and pleadings prepared by both sides in both the federal and State Court actions. The Court, therefore, summarizes above, without casting any judgments as to the merits of the opposing claims, some of the issues that lie at the heart of the State contract dispute and which must be resolved before this Court could take up the matter again.

its arrangement to be the exclusive operator of the concession stands in plaintiffs' theaters during the term of the loan, and (3) its "tying" the loan of money to plaintiffs to the condition that plaintiffs agree to the Concession Lease Agreement.

TCI in its State Court action has already moved for partial summary judgment asserting that plaintiffs' antitrust defenses may not under New York law be used to delay the outcome of the State based contract action. Plaintiffs' Affidavit in Opposition to Defendant's Motion, Exhibit B, TCI's Memorandum of Law in Support of its State Court Motion for Partial Summary Judgment, at 7–11. TCI further argues in its State Court motion that it is entitled not only to partial summary judgment on its claim, but severance of that claim so that it can seek to enter and enforce judgment on it. *Id.* at 12–14.

In TCI's State Court motion for partial summary judgment, ATI cross-moved to stay the State Court proceeding pending the outcome of ATI's claims in federal court.

On June 7, 1985, at the time defendant's present motion was called by this Court for oral argument, plaintiffs did not appear. Because plaintiffs were not there, the Court did not permit the defendant to argue. Instead, the Court stated for the record that having reviewed the briefs, it was inclined to stay the present case pending the outcome of the State action and instructed the defendant to submit an order to that effect.

Subsequently, plaintiffs arrived after the motion had been called and explained that they were late due to construction repairs on the Courthouse's facade which had caused the Courthouse entrance to be moved to the Internal Revenue Service building that is connected to the Courthouse and to the fact that they were then misinformed as to which elevator banks to use to get to the Courtroom. When plaintiffs arrived, they demanded the right to be heard and later repeated this demand by letter to the Court.

As the Court had permitted no oral argument and there is no right to oral argument in civil motions, the Court did not reschedule the motion.

■ Upon further consideration, the Court still believes it should abstain in the present action pending the outcome of the separate State action. Although the federal court does have exclusive jurisdiction over private federal antitrust actions, State Courts have the power to decide whether antitrust violations exist when asserted as defenses to actions in breach of contract. 1A J. Moore, W. Taggart, A. Vestal & J. Wicker, Moore's Federal Practice, ¶ 0.208b (2d ed. 1985).

■ As may be apparent from the somewhat lengthy discussion of the facts, it seems to the Court at this juncture that the facts of this case and the parallel State action involve predominantly breaches of contract and accounting for loan payments between parties who have been dealing with each other since 1975 under similar loan-concession lease arrangements. Whether the allegations of antitrust violations were added as an afterthought to TCI's filing a State action or possibly because ATI's principals obtained more enlightened legal counsel, the Court cannot venture to say, but at first blush, the antitrust allegations do not seem to be wholly meritorious.

However, because the bulk of the dispute between the parties relates to questions of State law and because it is possible for the State Court to determine whether an antitrust violation exists, this Court holds that it is in the interests of judicial restraint and comity to stay the present action. In the event that the State Court finds an antitrust violation, plaintiffs may always return here. Therefore, the Court also hereby dismisses this action without prejudice to plaintiffs' underlying claims and right to move to reinstate this action subsequent to the resolution of the State Court proceeding if circumstances should then warrant it.

SO ORDERED.