**ANDREA THEATRES, INC., and E.B. Cinema Corp., Plaintiffs-Appellants, Cross-Appellees,**

v.

**THEATRE CONFECTIONS, INC., Defendant-Appellee, Cross-Appellant.**

**Nos. 690, 778, Dockets 85–7824, 85–7888.**

United States Court of Appeals, Second Circuit.

Argued Jan. 22, 1986.

Decided March 31, 1986.

Allan E. Mayefsky, New York City, (Jeffrey L. Rosenberg, Rosenberg & Tulis, New York City, of counsel), for plaintiffs-appellants, cross-appellees.

Michael T. Tomaino, New York City, (Margaret A. Clemens, Nixon, Hargrave, Devans & Doyle, New York City, of counsel), for defendant-appellee, cross-appellant.

Before MANSFIELD, MESKILL and PIERCE, Circuit Judges.

MANSFIELD, Circuit Judge:

Andrea Theatres and E.B. Cinema Corp (collectively referred to as "the Theaters"), two New York corporations controlled by the same principals, appeal from an order entered by Judge Thomas C. Platt of the Eastern District of New York, 620 F.Supp. 37, dismissing without prejudice their complaint, which alleges that Theatre Confections, Inc. ("Confections") violated federal anti-trust laws, New York state anti-trust laws, New York state usury laws and claims that Confections breached its contract with the Theaters. Confections cross-appeals from the district court's failure to dismiss the complaint with prejudice. Citing "the interests of judicial restraint and comity", the district court abstained from adjudicating the Theaters' claims pending the outcome of an ongoing suit in New York State Supreme Court between the same parties involving the same transactions. We reverse the abstention order and dismiss the "cross-appeal".

On September 26, 1979, Confections entered into a loan agreement with the Theaters and three other movie houses under the same ownership. In return for a loan of $300,000, the five Theaters agreed to an interest rate of 12% or 2½% above the prime rate of a specified bank, whichever proved to be greater. The agreement provided Confections with several forms of collateral and security, including liens and personal guarantees of the Theaters' four principals.

The parties simultaneously entered into a "Concession Lease Agreement", which was to run until March 1987. Under the agreement the Theaters leased portions of their premises "specifically identified as concession areas" to Confections and gave Confections "exclusive possessory interest" over those locations. The contract provided that the leased premises "shall be used by [Confections] for the sole purpose of selling and/or distributing refreshments, tobacco, and novelty items" and that Confections "shall have the exclusive right to determine the hours of concession operation and the merchandise to be sold to the customers and patrons of the Theatres, as well as the exclusive right to alter and/or determine the sizes and retail sales prices of such merchandise ..." The five Theaters agreed to staff the concessions and to collect sales revenues from their operation. In return, Confections agreed to pay the five Theaters 50% of the sales price of all refreshments and novelty items sold.[1]

The loan agreement was expressly conditioned upon the Theaters' performance of the concession agreement. It required that the Theaters comply fully with the concession lease and specified that any breach of the concession agreement by the Theaters would be an event of default under the loan agreement. The concession agreement permitted Confections to extend its dura-

---

**1.** The lease provided that for specified periods two of the theaters would only receive rents equalling 48% of total revenues.

tion until the Theaters satisfied their obligations under the loan contract.

In June 1984 Confections commenced an action against the Theaters in New York State Supreme Court,[2] alleging that the Theaters had breached the concession lease agreement by refusing to make payments required under the contract and refusing to permit Confections to staff and operate the concessions. The complaint seeks injunctive relief and an accounting. In an amended answer, the Theaters denied the allegations and raised state law affirmative defenses and counterclaims.

In December 1984, before further action was taken in state court, the Theaters commenced this suit in federal court. The complaint alleges that Confections "is one of the leading lenders of monies in the Northeast and Northcentral states to the 'non-chain' movie theaters" and has "a substantial impact on interstate commerce in the conduct and operation of its businesses ..." It claims that "[a]s a tie-in to its money lending activities, Theatre Confections is also engaged in the business of selling refreshments, candy, tobacco and novelty items for movie theaters" and that the Theaters were "coerced" into accepting the concession lease agreement because they had "no alternative financial source".

Claims 1 and 2 of the federal complaint allege that these actions violated §§ 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 & 2, and § 3 of the Clayton Antitrust Act, 15 U.S.C. § 14, because they constituted (a) an illegal tying arrangement, (b) an illegal exclusive dealing arrangement, (c) resale price maintenance and (d) were part of a scheme to monopolize the businesses of lending money to movie theater owners and of operating concessions in movie theaters in the Northeast and Northcentral states. The Theaters seek damages and declaratory relief based on these federal anti-trust claims. The violations of state law alleged in Claims 3 through 5 had also been asserted by the Theaters as affirmative defenses and counterclaims in the state court litigation.

In January 1985 the Theaters received permission to amend their answers and counterclaims in the state court action to add the federal anti-trust claims asserted in their federal action. Confections then moved in the state court for partial summary judgment, asserting that anti-trust defenses cannot be raised as defenses in a breach of contract action. In its moving papers, Confections urged the state court to refrain from resolving the merits of the anti-trust claims. It argued that the Theaters' "remedy, if any, for alleged violations of antitrust laws lies in the federal courts." The Theaters cross-moved for a stay of the state action pending resolution of the anti-trust claims by the federal court. The state court has not yet ruled on these motions.

On February 4, 1985, Confections moved in the Eastern District of New York pursuant to Fed.R.Civ.P. 12(b)(6) for dismissal of the federal action or, in the alternative, for dismissal or stay of the federal action pending resolution of the state action. In a memorandum opinion dated September 23, 1985, the district court granted the alternative relief sought by Confections. The court noted that "the bulk of the dispute ... relates to questions of State law" and it concluded that since any action it would take "might carry with it the implication that the learned Supreme Court Justice to whom the State Court proceeding has been assigned is not as qualified to decide whether the identical counterclaims and defenses should stand or be dismissed, comity dictates that no such action should be taken by us absent an express request therefor from another such judge in a prior action ..." Accordingly, the court dismissed the action without prejudice to the Theaters' underlying claim and its right to return to the federal court "[i]n the event the State Court finds an antitrust violation." The district court therefore did not

**2.** Only two of the theaters are parties to the pending litigations since the principals apparently no longer operate the other three theaters.

rule on Confections' motion for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief could be granted.

## DISCUSSION

*Abstention*

In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), the Supreme Court laid down the principles governing federal abstention and, quoting from its decision in *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959), stated:

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest."

The Court further noted that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction", *id.* 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910)), and that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Id.* See in accord, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 14, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983).

■ In determining whether there are "extraordinary circumstances" warranting abstention,[3] an important factor to be considered is whether the state court has broad and comprehensive concurrent jurisdiction to adjudicate the claims asserted in the federal action. If not, abstention might only serve to encourage piecemeal adjudication of the issues raised in the federal suit. *See Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 567, 570, 103 S.Ct. 3201, 3213, 3215, 77 L.Ed.2d 837 (1983); *Moses H. Cone Memorial Hospital, supra*, 460 U.S. at 19–20, 26, 103 S.Ct. at 938–39, 942; *Colorado River, supra*, 424 U.S. at 819–20, 96 S.Ct. at 1247. Indeed, abstention is clearly improper when a federal suit alleges claims within the exclusive jurisdiction of the federal courts. *Levy v. Lewis*, 635 F.2d 960, 967–68 (2d Cir.1980); *Lyons v. Westinghouse Electric Corp.*, 222 F.2d 184 (2d Cir.), *cert. denied*, 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955); *see Silberkleit v. Kantrowitz*, 713 F.2d 433 (9th Cir. 1983); *Turf Paradise, Inc. v. Arizona Downs*, 670 F.2d 813, 820–21 (9th Cir.), *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982); *Movielab, Inc. v. Berkey Photo, Inc.*, 321 F.Supp. 806 (S.D. N.Y.1970), *aff'd*, 452 F.2d 662 (2d Cir.1971); *see also Note, The Res Judicata Effect of Prior State Court Judgments in Sherman Act Suits*, 51 Ford.L.Rev. 1374, 1381 n. 33 (1983) ("no justification for stay" when federal jurisdiction is exclusive).

The reason for this doctrine is clear. Absent broad state court jurisdiction that would enable the state court to dispose of the entire matter, including the issues before the federal court, abstention could hardly be justified on grounds of " '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' ". *Colorado River, supra*, 424 U.S. at 817, 96

---

**3.** The only basis asserted for abstention in the present case is that it falls within the "exceptional circumstances" category. It is undisputed that the case does not qualify for abstention under the only other categories, which are "(1) avoiding a federal constitutional issue by seeking a state determination of state law; (2) deferring to state resolution of difficult state law questions that involve important public policy or where federal review would be disruptive of state regulation or administration; and (3) declining to restrain state criminal proceedings, collection of taxes and the like." *Giardina v. Fontana*, 733 F.2d 1047, 1052 n.1 (2d Cir.1984). The prospect of federal adjudication of appellants' anti-trust claims concurrent with appellee's breach of contract suit in state court plainly does not implicate any of these doctrines.

S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). Indeed, abstention would run counter to Congress' determination, reflected in grants of exclusive federal jurisdiction, that federal courts should be the primary fora for handling such claims. The grant of such jurisdiction could be seriously hampered if federal courts exercised discretionary power to await the outcome of related state court proceedings.

■ Although state courts may properly consider federal claims raised as defenses in a state court action, including claims over which federal courts have exclusive jurisdiction, *see Hathorn v. Lovorn*, 457 U.S. 255, 266 & n. 18, 102 S.Ct. 2421, 2429 & n. 18, 72 L.Ed.2d 824 (1982); *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1143 n. 8 (2d Cir.1986); 1A *Moore's Federal Practice*, ¶ 0.208(b) at 2349 (2d ed. 1985), they may not grant affirmative relief based on claims for which federal jurisdiction is exclusive. *See Levy, supra*, 635 F.2d at 967; *Movielab, supra*, 321 F.Supp. at 810. A defendant prevailing on such federal defenses in the state court would still have to return to federal court to seek affirmative relief. Moreover, if a state court rejected such federal defenses it is questionable whether the state defendant would be precluded from asserting them as the basis for affirmative relief in a federal suit. *See Marrese v. American Academy of Orthopaedic Surgeons*, —— U.S. ——, 105 S.Ct. 1327, 1332–33, 84 L.Ed.2d 274 (1985). In *Lyons v. Westinghouse Electric Corp.*, 222 F.2d 184, 189 (2d Cir.), *cert. denied*, 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737, we held that rejection of a federal anti-trust defense in state court does not bar a later federal suit for treble damages based on the same claims. Judge Learned Hand wrote, "it appears to us that the grant to

the district courts of exclusive jurisdiction over the action for treble damages should be taken to imply an immunity of their decisions from prejudgment elsewhere; at least on occasions like those at bar, where the putative estoppel includes the whole nexus of facts that make up the wrong." *Id.*

■ Applying these principles, we conclude that the district court's abstention order in the present case must be reversed as an abuse of discretion. Claims 1 and 2 of the complaint seek relief under the private enforcement provision of the Clayton Act, which is only available in federal court and is predicated on federal rights. 15 U.S.C. § 15;[4] *Vendo Co. v. Lektro-Vend Co.*, 433 U.S. 623, 632, 97 S.Ct. 2881, 2888, 53 L.Ed.2d 1009 (1977) (plurality opinion); *Banana Distributors, Inc. v. United Fruit Co.*, 269 F.2d 790, 793 (2d Cir.1959). Even apart from the grant of exclusive federal jurisdiction, the possibility that the state court will conclusively resolve the Theaters' anti-trust claims is slim. *See Moses H. Cone, supra*, 460 U.S. at 19–20, 103 S.Ct. at 938–39 (possibility of avoiding piecemeal litigation is factor in decision to abstain). The Theaters have moved to stay the state action pending the outcome of the federal case. Confections resisted the motion but indicated to the state court that it too favored federal resolution of the anti-trust claims. Confections also moved for summary judgment in the state court action on the ground that anti-trust violations are not a valid defense to a breach of contract suit. If either of these motions should be granted the claims would be dropped from the state court proceeding without having been addressed on their merits.

The state forum is no more convenient to both parties than is the federal court. *Id.* at 19, 103 S.Ct. at 938 (convenience is

---

4. Title 15 U.S.C. § 15 reads, in pertinent part:

"(a) **Amount of recovery; prejudgment interest**

"Except as provided in subsection (b) of this section, any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of the suit, including a reasonable attorney's fee."

factor in decision to abstain). Although Confections is headquartered in Rochester, New York, where the state suit is pending, the Theaters' offices are located in the Eastern District of New York. Additionally, as in *Moses H. Cone,* neither court has assumed jurisdiction "over any res or property." *Id.*

In deciding to abstain the district court relied on its assessment that "the bulk of the dispute between the parties relates to questions of State Law". Although the root of the dispute undoubtedly centers on the validity and interpretation of the relevant contracts, this case also involves federal issues.[5] In *Moses H. Cone, supra,* 460 U.S. at 26, 103 S.Ct. at 942, the Court noted that the presence of federal issues in a case "must always be a major consideration weighing against surrender" of federal jurisdiction. This consideration is particularly compelling when only the federal courts can grant affirmative relief based on the federal claim. *Cf. id.* at 25, 103 S.Ct. at 941 (source of law "has less significance" where issue is one of concurrent jurisdiction). In view of the limited progress of the state court suit to date, the fact that the state action was commenced before the federal suit carries little weight. *See id.,* at 21–22, 103 S.Ct. at 939–40. Indeed, after pleadings in the state action were completed, and motions were filed to stay the proceeding and drop the anti-trust defenses, the state case came to a halt.

In concluding that the district court lacked discretion to abstain from adjudicating the Theaters' anti-trust claims, we do not suggest that the court is required to exercise jurisdiction over the pendent state law claims. As the Supreme Court has noted, "needless [federal] decisions of state law should be avoided both as a matter of comity and to promote justice between the parties by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Confections urges us to affirm the dismis-

sal of Claims 3 through 5 as a proper exercise of the district court's discretion to sever pendent state claims. Such a dismissal may well be within the district court's power. However, we conclude that the better course is to permit the district court to reassess the propriety of adjudicating the pendent state law claims in light of our conclusion that it must adjudicate the Theaters' federal claims.

*Dismissal Under Rule 12(b)(6)*

Since the district court, having decided to abstain, did not rule upon Confections' motion under Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim entitling the Theaters to relief, no final order exists that would confer upon us jurisdiction to review the issue of whether the complaint should have been dismissed as a matter of law. 28 U.S.C. § 1291. Only if the district court dismissed the complaint, either upon its face or pursuant to a motion for summary judgment, would we be empowered to consider Confections' attempted "cross-appeal".

■ Were the complaint patently dismissible as a matter of law, we might so note in the interest of conserving judicial resources. *See Fletcher v. Washington and Lee University,* 706 F.2d 475, 478 (4th Cir. 1983). However, guided by the principles that all allegations of the complaint must on a Rule 12(b)(6) motion be accepted as true, all reasonable inferences must be drawn in favor of the plaintiffs and that the motion must be denied unless the plaintiffs can prove no set of facts entitling them to relief, *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *McClain v. Real Estate Board,* 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), we cannot say that the complaint is patently dismissible on its face even though its allegations may not be able to withstand a motion for summary judgment or a trial. The Theaters allege in substance that they participated in an anticompetitive scheme with the economically more powerful Confections. *See Perma*

---

5. Even if the suit involved only issues of state law, abstention may still not be appropriate.

*See, e.g., Giardina v. Fontana,* 733 F.2d 1047, 1053 (2d Cir.1984).

*Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 139–40, 88 S.Ct. 1981, 1984–85, 20 L.Ed.2d 982 (1968); *Premier Electrical Construction Co. v. Miller-Davis Co.*, 422 F.2d 1132, 1138 (7th Cir.), *cert. denied*, 400 U.S. 828, 91 S.Ct. 56, 27 L.Ed.2d 58 (1970). The allegation that Confections had "substantial economic power" in the relevant credit market precludes a ruling that the claim of an unlawful tying arrangement is insufficient as a matter of law, even though it may well be refuted by contrary proof. The same is true of the complaint's allegation that the parties' exclusive dealing arrangement is unreasonable. *See Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320, 327–29, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961); *Konik v. Champlain Valley Physicians Hosp.*, 733 F.2d 1007, 1015 (2d Cir.), *cert. denied*, — U.S. ——, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). Similar conclusions must be drawn with respect to the claims of monopolization in violation of § 2 of the Sherman Act and exclusive dealing in violation of § 3 of the Clayton Act.

Nor is it clear that the Theaters' antitrust claims are time-barred. The four-year statute of limitations begins to run when a cause of action accrues, 15 U.S.C. § 15b, and "each time a plaintiff is injured by an act of the defendants a cause of action accrues to him …". *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1270 (9th Cir.1975). Thus the Theaters' claim need not be based solely upon the execution of a contract, but may also seek relief for subsequent injuries incurred within the four-year period, even though the harm stemmed from performance of the contract. *National Souvenir Center v. Historic Figures, Inc.*, 728 F.2d 503, 509–10 (D.C.Cir.) *cert. denied*, — U.S. ——, 105 S.Ct. 103, 83 L.Ed.2d 48 (1984).

In view of the complaint's allegations, we cannot conclude that it is so patently insufficient as to warrant exercising our supervisory power to direct that it be dismissed regardless of the absence of an appealable order.

The district court's abstention order is reversed. Confections' "cross-appeal" is dismissed.