Norman KAMERMAN, Plaintiff,

v.

Saul STEINBERG, Reliance Group Holdings, Inc., Reliance Group, Inc., Reliance Financial Services Corp., and Reliance Insurance Company, Defendants.

Norman KAMERMAN, Plaintiff,

v.

Saul STEINBERG, Reliance Group Holdings, Inc., Reliance Group, Inc., Reliance Financial Services Corp., Reliance Insurance Company, and Walt Disney Productions, Inc., Defendants.

Shirley BROWN and Edward Rosen, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Saul STEINBERG, Reliance Group Holdings, Inc., Reliance Group, Inc., Reliance Financial Services Corp., and Reliance Insurance Company, Defendants.

Barnett STEPAK, Plaintiff,

v.

Saul STEINBERG, Reliance Group Holdings, Inc., Reliance Group, Inc., Reliance Financial Services Corp., and Reliance Insurance Company, Defendants.

LEXIM INVESTORS CORP. and Dohsa Anstalt Corp., on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Saul STEINBERG, Reliance Group Holdings, Inc., Reliance Group, Inc., Reliance Financial Services Corp., and Reliance Insurance Company, Defendants.

Nos. 84 Civ. 4440 (CBM), 84 Civ. 4550 (CBM), 84 Civ. 4654 (CBM), 84 Civ. 4665 (CBM) and 84 Civ. 8001 (CBM).

United States District Court, S.D. New York.

March 3, 1988.

Harvey Greenfield, Abbey & Ellis, New York City, for plaintiff Stepak.

Wolf, Haldenstein, Adler, Freeman & Herz by Daniel W. Krasner, Jeffrey G. Smith, Peter C. Harrar, New York City, for plaintiffs Brown and Rosen.

Kohn, Savett, Klein & Graf, P.C., Alvin J. Ivers, Philadelphia, Pa., for plaintiff Rosen.

Kaufman, Malchman, Kaufmann & Kirby by Irving Malchman, New York City, for plaintiff Kamerman.

Delson & Gordon, New York City, for plaintiffs Lexim Investors and Dohsa Anstalt Corp.

Paul, Weiss, Rifkind, Wharton & Garrison by Lewis A. Kaplan, Blair C. Fensterstock, New York City, for defendants Steinberg, Reliance Group Holdings, Inc., Reliance Group, Inc., Reliance Financial Services Corp., and Reliance Ins. Co.

Donovan, Leisure, Newton & Irvine, New York City, for The Walt Disney Co.

Wolf, Popper, Ross, Wolf & Jones by Robert A. Skirnick, Mark Levine, New York City, Milberg, Weiss, Bershad, Specthrie & Lerach by William S. Lerach, San Diego, Cal., Corinblit & Seltzer by Marc M. Seltzer, Hennigan & Mercer by J. Michael Hennigan, Dana Carli Brooks, Los Angeles, Cal., for movants Ernst & Co. and Aronwald.

## OPINION

MOTLEY, District Judge.

These consolidated cases, filed in 1984, arise out of an alleged scheme by defendants to "greenmail" the Walt Disney Company (Disney). Plaintiffs contend that defendants filed materially misleading Schedule 13D forms, in violation of Sections 10(b) and 13(d) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78m(d), and Rule 10b–5, 17 C.F.R. § 240.10b–5. In connection with the cases, the parties submitted numerous motions, the following seven of which were pending on November 12, 1987.

1. Motion by Ernst & Co. and George M. Aronwald to Intervene and to Stay the Proceedings

2. Defendants' Motion for Summary Judgment

3. Plaintiff Norman Kamerman's Cross–Motion for Summary Judgment

4. Cross–Motion of Plaintiffs Brown, Rosen, Lexim Investors Corp., and Dohsa Anstalt Corp. for Summary Judgment

5. Plaintiffs' Motion for Leave to File a Consolidated Amended Complaint

6. Motion to Substitute Ruth Kamerman, Executrix of the Estate of Norman Kamerman, for Norman Kamerman

7. Plaintiffs' Motion for an Order Determining that the Case May Proceed as a Class Action and for Reconsideration of Certain Matters in the Court's Opinion of 9/10/86.

At that time, after scheduled hearings on the motions had been adjourned repeatedly by agreement of counsel for the various movants, the court summarily decided several of the motions on the basis of written submissions. *See World Brilliance Corp. v. Bethlehem Steel Co.*, 342 F.2d 362, 366 (2d Cir.1965) ("Motions may be decided wholly on the papers, and usually are...."); Local Civil Rule 3(i), United States District Courts for the Southern and Eastern Districts of New York (permitting judges to determine motions without oral hearings). The court was concerned that further delay would be tantamount to granting the Motion for a Stay without having determined the legal merits of that motion. This Opinion explains the court's reasoning for its rulings in its Order of November 12, 1987.

## I. FACTS

The crux of the present dispute lies in the veracity of certain statements included in a Schedule 13D, and a number of amendments thereto, filed by defendants between March 28 and June 8, 1984. The Schedule 13D filed on March 28, 1984 revealed that defendants had acquired 6.3% of Disney's common stock. Defendants represented the purpose of the transaction as follows.

> The Securities listed in Item 5 herein were purchased for investment as part of the general investment portfolios of the Purchasers listed therein.

> Subject to availability and price and subject to applicable laws and regulations, the Purchasers may increase their holdings but also reserve the right to dispose of all or a portion of such Securities on terms and at prices determined by them. While the Purchasers have no present intention of participating in the formulation, determination or direction of the basic business decisions of the Issuer, the Purchasers reserve the right at any time to cease being passive investors if in their judgment such action becomes necessary or desirable to protect or enhance the value of their investment in the Issuer. In the event that the Purchasers cease being passive investors, a Notification and Report Form under the Hart–Scott–Rodino Antitrust Improvements Act of 1976 will have to be filed, and the applicable waiting period expire, before additional purchases of voting securities of the Issuer may be made by the Purchasers.

Exhibits Submitted in Support of [Defendants'] Motion for Summary Judgment 6, at 9–10 [hereinafter Def.Exh.]. Over the next few weeks, defendants filed three amendments to their Schedule 13D. The amendments revealed an increase in defendants' holdings of Disney stock, but no change in the stated purpose of the new acquisitions.

Defendants filed a fourth amendment to the Schedule 13D on April 25. This amendment noted no new acquisitions of stock but indicated that a Notification and Report Form was being filed pursuant to the Hart–Scott–Rodino Antitrust Improvements Act of 1976. The Notification and Report Form sought permission to acquire up to 5,467,000 additional shares of Disney stock.

One week later, defendants announced a block purchase of 1,000,000 shares of Disney stock. Their share of Disney securities then increased from 9.3% to 12.2% of the company's stock. The shares were purchased in a single block to permit defendants to resell them within six months without incurring liability pursuant to Section 16(b) of the Securities and Exchange Act, 15 U.S.C. § 78p(b) (1982).

On May 17, 1984, Disney announced that it was purchasing a Florida real estate company, the Arvida Corporation. The corporation was to be acquired in exchange for between 2.6 and 3.8 million shares of Disney stock. Defendants thereafter announced their belief that the acquisition was not in Disney's interest, and stated that to protect the value of their investment, they could no longer remain passive investors. In their sixth amendment to the Schedule 13D, dated May 25, 1984, defendants indicated:

> Purchasers are considering obtaining control of the Issuer through one or more of the following: (i) a tender or exchange offer or a merger or other corporate reorganization ..., (ii) ac-

quiring additional shares in brokerage or private transactions, or (iii) a proxy solicitation to replace the Issuer's incumbent Board of Directors.

Def.Exh. 12, at 3. Defendants subsequently announced that they would seek the removal of Disney's board and that they had filed suit to enjoin the acquisition by Disney of the Arvida Corporation.

In early June, defendants began to seek financing for a tender offer. Disney then announced that it would purchase Gibson Greetings, Inc.

By June 8, defendants had secured the approval of their various boards and the necessary financing for a tender offer for Disney. They then informed Disney by letter of their intention to initiate a cash tender offer for 49% of Disney stock at $67.50 per share. The offer would be increased to $72.50 per share in cash or securities if Disney agreed to endorse the tender offer, cancel the proposed acquisition of Gibson Greetings, and eschew further corporate transactions until the tender offer was complete.

The events that transpired over the course of the weekend of June 8–10 are in dispute. By Sunday, June 10, however, negotiations were unquestionably in progress with respect to a repurchase by Disney of defendants' stock. Defendants told Disney that they would sell their shares for $70.83 per share plus reimbursement of $28 million in expenses. At Disney's request, the New York Stock Exchange agreed not to open trading in Disney stock until after the Disney board met on Monday morning.

On June 11, the Disney board met. Negotiations between Disney and defendants proceeded. Disney continued to urge the New York Stock Exchange not to open trading in Disney stock until the Disney board reached a decision. At 2:30 p.m. New York time, however, the Exchange disregarded Disney's pleas and opened trading. Disney subsequently approved the purchase agreement, transferred money for defendants' shares to New York, and at 5:24 p.m. New York time, announced the transaction. Defendants filed a final amendment to their Schedule 13D on June 13.

Even before the repurchase was complete, Disney stockholders began filing suits, challenging these transactions. On June 8, 1984, the first suit was filed in California state court. Eighteen additional California state lawsuits soon followed, and all nineteen were consolidated into one action on September 21, 1984. The plaintiffs alleged various state claims, including breach of fiduciary duties, tortious interference with economic advantage, and declaration of an unlawful and discriminatory dividend. The California plaintiffs successfully obtained a preliminary injunction prohibiting defendants from disposing of approximately $60 million of the money it had received from the repurchase and requiring them to file periodic accounting reports with the court describing any changes in the investment of that money.

The first federal case was filed on June 25, 1984 in the Southern District of New York. Four subsequent cases were consolidated with it by this court on September 10, 1986.

## II. MOTION TO INTERVENE AND TO STAY FEDERAL PROCEEDINGS

Movants Ernst & Co. and George M. Aronwald ask the court to stay these federal cases until final disposition of the nineteen consolidated actions entitled *Heckmann, et al. v. Ahmanson, et al.* (*Heckmann*), No. CA 000851, pending in the Superior Court of the State of California for the County of Los Angeles. They also seek an order permitting them to intervene in this action for the limited purpose of pressing the motion to stay. They argue that they are entitled to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2) because if judgment is entered in the federal case before the California action is complete, the claims in the latter action may be barred. Alternatively, they request permission to intervene pursuant to Federal Rule of Civil Procedure 24(b) because the state and federal claims "have a question of law or fact in common."

■ The court notes at the outset the peculiar character of movants' application to intervene. Ordinarily, a person desiring to intervene seeks to join a pending action either as a plaintiff or as defendant. The federal rules therefore require that the applicant "set forth the claim or defense for which intervention is sought." Fed.R. Civ.P. 24(c). If the application is granted, the intervenor is "treated as if he [or she] were an original party...." *Marcaida v. Rascoe*, 569 F.2d 828, 831 (5th Cir.1978) (*per curiam*). The movants here, on the other hand, do not seek to join this action as either plaintiffs or as defendants. They have no claim to press against defendants; nor have they any defense to assert against plaintiffs. In fact, they have no intention whatsoever of litigating the causes of action asserted in the federal complaint. Their sole purpose in submitting their motion is to delay the prosecution of the federal action. With this goal in mind, they dress in the language of Rule 24 what is in reality an application for some special status permitting them to press their motion for a stay. For this reason alone, the court believes that the application to intervene should be denied.

■ Even if the application is regarded more liberally, movants cannot satisfy the requirements of Rule 24. Rule 24(a)(2) sets forth four criteria that must be satisfied by persons seeking to intervene as of right: 1) the application to intervene must be timely, 2) the applicant must claim an interest relating to the property or transaction that is the subject of the action, 3) the applicant must show that disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, and 4) the applicant's interest may not be adequately represented by existing parties. *See Restor–A–Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871, 873–74 (2d Cir.1984); *United Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978). The court finds that movants fail to satisfy the first, third, and the fourth requirements.

First, the application for "intervention" is not timely. Movants waited well over two years after commencement of the federal cases to submit their motion for a stay. They cannot claim to have been unaware of the federal cases before November 1986 because the federal cases were mentioned in the presence of several of movants' attorneys at hearings in California as early as July 2 and August 7, 1984. The court finds movants' sudden concern for economical judicial administration unconvincing in light of the fact that they waited until discovery in the federal cases was virtually complete before submitting their motion. Taking into consideration all the circumstances, including the length of time that movants knew of their alleged interest in this case, the advanced stage of the proceedings, the prejudice to existing parties, and the utter want of explanation for the delay in moving to intervene, the court finds that movants failed to satisfy the first requirement of Rule 24(a)(2). *See NAACP v. New York*, 413 U.S. 345, 365, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973); *Lelsz v. Kavanagh*, 710 F.2d 1040, 1044 (5th Cir.1983); *Shelter Framing Corp. v. Pension Benefit Guar. Corp.*, 705 F.2d 1502, 1508 (9th Cir.1983), *vacated on other grounds*, 467 U.S. 1257, 104 S.Ct. 3550, 82 L.Ed.2d 853 (1984); *Carey v. Klutznick*, 88 F.R.D. 249, 250 (S.D.N.Y.1980).

The court is also unpersuaded that prompt disposition of the present claims will impair or impede movants' interests. The California actions and the federal actions assert entirely different claims and they involve substantially different parties. Therefore, it is unclear that a judgment in the present case would present any problems of collateral estoppel or *res judicata*. *See Commissioner v. Sunnen*, 333 U.S. 591, 597–98, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). Furthermore, the federal plaintiffs do not claim a right to the specific fund of money subject to the California court's preliminary injunction. Because the damage award they hope to win need not be financed by the monies covered by the California court order, there is no genuine threat to movants' interest in those funds. Finally, movants can hardly complain about potential prejudice to their derivative suit, insofar as any damage award in the federal

derivative suit would benefit exactly the same party that would profit from winning the California derivative suit, namely Disney.

Movants do not even attempt to show that their interests are inadequately represented. They have alleged neither collusion, possible nonfeasance, or incompetence on the part of the federal plaintiffs. *See British Airways Bd. v. Port Authority of New York and New Jersey,* 71 F.R.D. 583, 585 (S.D.N.Y.), *aff'd,* 556 F.2d 554 (2d Cir. 1976). Apart from their unsupported speculations concerning collateral estoppel and *res judicata,* they have not even alleged adversity of interests. For all these reasons, then, movants are not entitled to intervene as of right.

■ Movants' application for permissive intervention pursuant to Rule 24(b) also fails for several reasons. First, as the court indicated above, the application is not timely. Second, Rule 24(b) specifically directs the court to "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties," and movants are seeking to intervene for the sole purpose of delay. Finally, it is unlikely that movants " 'will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented' " inasmuch as they plan not to contribute at all to the federal action apart from making the present motion. *United States Postal Service v. Brennan,* 579 F.2d at 192 (quoting *Spangler v. Pasadena City Bd. of Educ.,* 552 F.2d 1326, 1329 (9th Cir.1977)). The court therefore denies the motion to intervene pursuant to Rule 24(b).

■ Even if intervention were permissible, movants have not established that a stay is warranted. They argue that "reasons of wise judicial administration" dictate that this court delay the federal suits until the California actions have been decided. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). For two reasons the court is not persuaded by this argument.

First, the considerations cited by movants in support of their claim are inapplicable to the present case. Movants identify six factors that the court allegedly must consider in deciding whether to exercise jurisdiction in this case. These factors, which are enumerated in several Supreme Court opinions reviewing cases in which both federal and state courts had jurisdiction over the plaintiff's claims, *see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1980); *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978); *Colorado River, supra;* must be weighed *only* when those courts have *concurrent* jurisdiction, *see Levy v. Lewis,* 635 F.2d 960, 967 (2d Cir. 1980) ("[I]t is clear ... that abstention for purposes of judicial economy under *Colorado River* applies only where concurrent federal-state jurisdiction exists."). In the present case, the federal court has *exclusive* jurisdiction of the securities claims presented in the federal suits, 15 U.S.C. § 78aa, so this balancing of considerations is wholly unnecessary.

■ When a federal court has exclusive jurisdiction over a plaintiff's claims, it may not abstain from hearing the case. "Where exclusive jurisdiction exists, only the federal courts can provide affirmative relief. Thus federal courts must hear claims within their exclusive jurisdiction, for otherwise the right alleged would never be fully adjudicated." *Levy v. Lewis,* 635 F.2d at 967 (citation omitted). This rule applies as much to requests for a stay as it does to motions for outright dismissal. *See Moses H. Cone Memorial Hosp.,* 460 U.S. at 28, 103 S.Ct. at 943·("[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal."). As the Second Circuit noted,

abstention would run counter to Congress' determination, reflected in grants of exclusive federal jurisdiction, that federal courts should be the primary fora for handling such claims. The grant of such jurisdiction could be seriously hampered if federal courts exercised discre-

tionary power to await the outcome of related state court proceedings.

*Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 63 (2d Cir.1986). The law of this Circuit clearly mandates denial of the motion to stay.

The cases cited to the contrary by movants are easily distinguishable. *Klein v. Waltson & Co.*, 432 F.2d 936 (2d Cir.1970), was decided prior to *Colorado River.* Moreover, the case involved a plaintiff who brought a federal action grounded on the same facts on which he based an action in state court five years earlier. The facts that different plaintiffs are pressing the present state and federal cases and that they filed these cases virtually contemporaneously render *Klein* an inappropriate authority for the question before this court. *Saltzman v. Kirshner*, [1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,482 (S.D.N.Y.1978) [Available on WESTLAW, 1978 WL 1096], is inapposite because, unlike in the present case, the parallel state proceedings were virtually complete. The court ruled that plaintiff could not be damaged by a temporary stay when the state case had reached the stage of a hearing on a proposed settlement. The California cases, on the other hand, have a long way to go, and the present plaintiffs stand to suffer from a lengthy delay. *Clayton v. Skelly Oil Co.*, 26 Fed.R.Serv.2d 317 (S.D. N.Y.1978) [Available on WESTLAW, 1978 WL 1113], is wholly irrelevant to the present motion because it decided a question of class certification, not of jurisdiction. In sum, movants have not cited a single authority that persuades this court not to exercise its exclusive jurisdiction over this case.

■ The second reason that a stay is not justified is that even if the decision to hear the case were within the discretion of this court, the factors enumerated by the Supreme Court for determining whether to exercise jurisdiction militate against a stay. These factors are:

a. the order in which the courts assumed jurisdiction over property relating to the subject matter of the case,

b. the inconvenience of the federal forum,

c. the desirability of avoiding piecemeal or duplicative litigation,

d. the order in which the courts obtained jurisdiction,

e. whether federal or state law governs, and

f. whether the state forum would be adequate to protect the plaintiffs' rights.

*See Moses H. Cone Memorial Hosp.*, 460 U.S. at 15, 103 S.Ct. at 936–37; *Will v. Calvert Fire Ins. Co.*, 437 U.S. at 663, 98 S.Ct. at 2557–58; *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246–47. The court finds only a single fact that weighs in favor of the motion. This lone consideration can by no stretch of the imagination defeat the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246.

Contrary to movants' claim, the California court has not assumed jurisdiction of a *res* that is the subject matter of this dispute. Even if money alone could be considered a *res*, the federal plaintiffs harbor no particular fascination with the monies that are subject to the preliminary injunction. Unlike in a bankruptcy case, for example, or an action contesting a will, the money over which the state court has exercised control does not represent the sole fund from which plaintiffs may satisfy their claims. The federal plaintiffs seek money damages; the source of payment, should they win, is of no great moment.

Movants appear to have completely misconstrued the thrust of the second factor. They confusedly insist that "inconvenience is clearly not a factor which militates against a stay of the Southern District Actions." With this assertion the court obviously has no complaint. The court also notes that defendants are based in New York; Disney's lawyers at Skadden Arps and its investment banker, Morgan Stanley, are in New York; and most of discovery, which has now been completed, took place in New York. The federal forum therefore appears not to be inconvenient, or at least no more inconvenient than the state court.

*See Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 63 (2d Cir.1986).

Movants' purported concern for judicial economy comes too late. They were aware of the progress of these actions for nearly two years before suddenly deciding that further prosecution of the federal claims would result in duplicative and piecemeal litigation. During this time, the federal parties have completed discovery and have engaged in extensive motion practice. It would be highly uneconomical for this court to stay the proceedings now that they have progressed so far.

The sole factor that does militate in favor of a stay is the fact that the first California suit was filed before the first federal case. Nevertheless, the Supreme Court has indicated that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Memorial Hospital*, 460 U.S. at 21–22, 103 S.Ct. at 939–40; *see also Andrea Theatres*, 787 F.2d at 64 ("In view of the limited progress of the state court suit to date, the fact that the state action was commenced before the federal suit carries little weight."). Because the federal suits have progressed considerably farther than the state actions, a stay cannot be justified even on the basis of this factor.

The final two factors—whether federal or state law governs and whether the state forum would be adequate to protect the plaintiffs' rights—strongly militate against a stay. The claims asserted in the present case arise almost exclusively under federal law. More important, as the court demonstrated above, they are claims over which the California state court may not assert jurisdiction. The California court would therefore be incapable of protecting the rights in dispute here. This court therefore must exercise jurisdiction over the case. *See Moses H. Cone Memorial Hospital*, 460 U.S. at 28, 103 S.Ct. at 943 ("If there is any substantial doubt as to [whether parallel state court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties,] it would be a serious abuse of discretion to grant the stay ... at all."). The motion for a stay is denied.

## III. MOTIONS FOR SUMMARY JUDGMENT ON FEDERAL CLAIMS

Defendants have argued that even if the court accepts plaintiffs' view of the facts, defendants are entitled to summary judgment with respect to the derivative suit. Defendants claim both that Disney lacks standing to bring the federal claims and that a release granted by Disney bars those claims. The court has not yet ruled on these issues, preferring to defer its decision until after it has heard oral argument. The following analysis applies to the motions for summary judgment with respect to the non-derivative federal actions.

■ According to defendants, the undisputed facts show that their Schedule 13D of March 28, 1984, and the amendments thereto, were accurate portrayals of their intentions in acquiring Disney stock. They argue that their initial purchases were for investment only and that their subsequent takeover effort was thwarted when Disney threatened a "scorched earth" defense. They assert that the subject of a possible repurchase of defendants' shares arose "only once or twice in passing in conversations between Joseph Flom, a Disney attorney, and Robert Hodes, an attorney for Reliance," Defendants' Memorandum in Support of Summary Judgment, at 10–11, and insist that the conversations confirm that prior to the weekend of June 8–10, defendants had no intent to sell back their stock. If defendants' account of the conversations is accepted, the amendments to their Schedule 13D might well be found wholly accurate and complete.

Plaintiffs contest this interpretation of the conversations. They allege that the conversations in fact demonstrate a greenmail attempt as early as May 24. They suggest that, at that time, defendants were attempting to negotiate a sale of their stock, but that Disney refused to pay the requested premium of $20 per share. Thus, plaintiffs maintain, "only price, not principal [sic] or intent, separated the par-

ties from a classic potential greenmail transaction." Consolidated Amended Complaint ¶ 17. They also allege that "Messrs. Hodes and Flom had at least one other conversation on or before June 6, 1984, regarding a possible buyback by Disney of [defendants'] holdings of Disney common stock, but could not agree on price." *See* Plaintiffs' Statement Pursuant to Rule 3(g) of the [Local] Civil Rules ¶¶ I(A)–(D). Plaintiffs' construal of the conversations would support their claims of misrepresentation.

The correct interpretation of these conversations, as well as the ultimate question of the accuracy and completeness of defendants' amendments to their Schedule 13D, are genuine issues of material fact under the standards articulated by the Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Defendants' own materials in support of their motion, *see* Def. Exh. 17, 34, provide affirmative evidence that a reasonable jury might find significantly probative of plaintiffs' allegations. *See id.* at 2511, 2514. Therefore, defendants are not entitled to summary judgment. On the other hand, the significance of the conversations is not apparent on their face, so, depending on what the evidence at trial shows, a reasonable jury might instead find that the conversations confirm defendants' position. The same issue of fact that precludes this court from granting defendants' motion for summary judgment also prevents the court from granting plaintiffs'. Because the truth and completeness of defendants' statements of purpose on the various amendments to their Schedule 13D filed after May 24 cannot be determined without assessing the meaning of these conversations, the court must deny both defendants' and plaintiffs' motions for summary judgment on the individual federal securities claims.

### IV. MOTIONS FOR SUMMARY JUDGMENT ON STATE CLAIMS

■ Defendants' motion for summary judgment with respect to plaintiff Norman Kamerman's individual and derivative actions for alleged violation of state law is quite another matter. On behalf of Disney, Kamerman seeks to have Disney's agreement to purchase defendants' stock rescinded on grounds of duress and coercion. *See* Def. Exh. 3, at 17. He has, however, alleged no genuinely contested facts that would require trial. Moreover, the only undisputed fact that he alleges to support his claim is that "Disney purchased Steinberg's Disney stock under threats by Steinberg to make a tender offer for 49 percent of Disney's stock and then to dismantle Disney." Memorandum of Plaintiff Norman Kamerman in ... Opposition to Defendants' Motion for Summary Judgment, at 39. This allegation fails to state a claim for duress or coercion.

New York law, which governs the purchase agreement in question, *see* Def. Exh. 31, at 4, establishes four elements of economic duress.

> The party relying on the defense must show: (1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative.

*Gulf & Western Corp. v. Craftique Productions, Inc.*, 523 F.Supp. 603, 610 (S.D. N.Y.1981). Kamerman cannot establish the second element by alluding to defendants' "threat" to make a tender offer. Tender offers are perfectly legitimate corporate maneuvers, and "it is not duress to threaten to take action which is legally permissible." *Hammelburger v. Foursome Inn Corp.*, 54 N.Y.2d 580, 593 n. 4, 431 N.E.2d 278, 285 n. 4, 446 N.Y.S.2d 917, 924 n. 4 (1981). For this reason, defendants are entitled to judgment as a matter of law. The court therefore grants defendants' motion for summary judgment as to this claim and denies Kamerman's cross-motion.

### V. MOTION TO FILE A CONSOLIDATED AMENDED COMPLAINT

■ The Motion to File a Consolidated Amended Complaint was submitted jointly by all plaintiffs except Kamerman. Because leave to amend a pleading "shall be

freely given when justice so requires," Fed. R.Civ.P. 15(a), courts generally deny such motions only if there is evidence of bad faith, dilatory motive, undue prejudice, or undue delay. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Defendants allege that plaintiffs have unduly delayed in bringing this motion, but as plaintiffs point out, the proposed new complaint raises no factual allegations or legal theories that have not been known to defendants for well over a year. The court finds that defendants will not be prejudiced by the filing of the consolidated amended complaint and that the filing will help to focus the issues for trial. The motion is therefore granted.

### VI. MOTION TO SUBSTITUTE PARTIES

Ruth Kamerman, executrix of the estate of Norman Kamerman, moves this court pursuant to Federal Rule of Civil Procedure 25(a) for an order substituting her in place of Norman Kamerman, deceased, in his Rule 10b–5 action (84 Civ. 4440) and his derivative suit (84 Civ. 4550). Because defendants do not oppose the motion and because both of these action survive the death of a plaintiff, *see Mills v. Sarjem Corp.,* 133 F.Supp. 753, 761–62 (D.N.J. 1955); *Saylor v. Bastedo,* 623 F.2d 230, 237 (2d Cir.1980); *cf. In re Saxon Securities Litigation,* 644 F.Supp. 465, 471 (S.D.N.Y. 1985) ("The remedial aspect of 10b–5 dictates that the action should not abate at the death of the purchaser/seller."); the court hereby grants this motion.

### VII. CONCLUSION

The above opinion explains the court's reasoning for its order of Nov. 12, 1987. Since that order was issued, the movants Ernst & Co. and George M. Aronwald have moved the court for reargument and reconsideration of its denial of their motion to intervene and for a stay. When the Motion for Reconsideration was filed, counsel for movants was not in a position to comply with Local Civil Rule 3(j), which provides: "There shall be served with the notice of motion a memorandum setting forth con-

cisely the matters or controlling decisions which counsel believes the court has overlooked." This court will forgive counsel's utter disregard of the portion of that rule forbidding the filing of affidavits "unless directed by the court," and hereby orders counsel to file the aforementioned memorandum no later than April 1, 1988. In accordance with the rule, "no oral argument shall be heard unless the court grants the motion and specifically directs that the matter shall be reargued orally."