**TICKET CENTER, INC., et al., Plaintiffs,**

v.

**BANCO POPULAR DE PUERTO RICO, et al., Defendants.**

Civ. No. 04–2062(JAG).

United States District Court, D. Puerto Rico.

Nov. 8, 2005.

Guillermo De–Guzman–Vendrell, Jose A. Ocasio–Robles, De Guzman & Gierbolini Law Office, San Juan, Santiago F. Lampon–Gonzalez, Lampon & Associates, Guaynabo, PR, for Plaintiffs.

Herman G. Colberg–Guerra, Nestor Mendez–Gomez, Maria D. Bertolez–Elvira, Pietrantoni Mendez & Alvarez, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is a "Motion to Dismiss Under Rule 12(b)(1) Based on Abstention," filed by Banco Popular on December 16th, 2004. (Docket No. 10). For the reasons set forth below, the Court **DENIES** the Motion.

## FACTUAL AND PROCEDURAL BACKGROUND [1]

Plaintiff Ticket Center ("Ticket Center" or "plaintiff") is a corporation engaged in the business of selling tickets for sports, cinema and entertainment events. Ticket Center's marketing, sales and distribution of tickets in Puerto Rico involves the use of computers, networks, call centers, advanced ticketing software, strategically located offices and distribution outlets, intensive use of the media and publicity, and direct coordination with promoters, sponsors and other related participants in the sports, cinema and entertainment market. (Docket No. 1 at 5).

Ticket Center alleges that, in an attempt to upgrade the services afforded, it approached defendant Banco Popular during the early months of 1995, looking to explore a potential joint venture that could benefit from the blending of Banco Popular's ATM network (ATH) and Ticket Center's business ideas, system and management team. At that time, Banco Popular was becoming one of the leading participants in the electronic transactions market.

For some time thereafter, plaintiff alleges that Banco Popular received confidential information from Ticket Center, mainly from financial disclosures and from direct inquiries and exchange of information regarding the business, the technology and the markets. Ticket Center argues that during the exploratory period (between 1995 to 2000), Banco Popular continuously misrepresented to Ticket Center great interest in pursuing the business together, although at particular stages, Banco Popular allegedly denied having the necessary technology expected by Ticket Center to upgrade the business.

Ticket Center contends that throughout the exploratory period, Banco Popular became "well schooled and knowledgeable" in the ticket product market. This know-how allegedly gave way to Banco Popular's creation of Ticketpop during the early months of 2002, sidestepping Ticket Center to eventually become its competitor. Ticket Center argues that it is Banco Popular's intention "to corner the market and monopolize the ticket product market in the future." *Id.*, at 7. Specifically, Ticket Center avers that on or about the summer/fall of 2002, Banco Popular became aware of the close relationship among the sponsorship and promotions market, the electronic transfers market and the ticket products market, and used its tremendous dominance in all three markets to "control, dominate and/or monopolize the ticket products market." *Id.*, at 8.

---

1. The Court extracts the relevant facts from the Complaint. (Docket No. 1).

Moreover, Ticket Center argues that Banco Popular conditioned the availability of its highly sought sponsorship and banking market products to the use of Ticketpop as the ticket provider for many events, namely: 1) the Expos baseball series; 2) events by promoters Angelo Medina and Rafo Muniz; 3) Caribbean Cinemas; 4) Casa de los Tapes; and 5) the José Miguel Agrelot Coliseum's ticket booth. *Id.*, at 9. As a further example of the alleged tying practices, Ticket Center states that Banco Popular has gone as far as to offer (through Ticketpop) below cost prices in the ticket product market—a $2.00 discount off the ticket price, while only charging $1.00 for service fee—if the customer used a Banco Popular ATM for payment through the Internet.

On October 7th, 2004, Ticket Center brought the present antitrust action pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, alleging violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Section 7 of the Clayton Act, 15 U.S.C. § 18. Ticket Center also seeks redress pursuant to Section 106(e) of the Bank Holding Company Act, 12 U.S.C. § 1975 (granting federal question jurisdiction to redress and enjoin violations involving anti-competitive tie-ins and conditional agreements of banking products), and various supplemental state tort and antitrust causes of actions. (Docket No. 1). The relief sought by Ticket Center includes injunctive relief pursuant to 15 U.S.C. § 26 and 12 U.S.C. § 1976; treble damages in the amount of forty-five million dollars

($45,000,000.00); costs and attorneys' fees; and any additional remedy the Court deems appropriate. *Id.*, at 24.

On December 16th, 2004, Banco Popular filed a "Motion to Dismiss under Rule 12(B)(1) Based on Abstention," rooted in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1941), *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). (Docket No. 10). Banco Popular moves for the dismissal of the complaint arguing that Ticket Center has filed five other adjudicative proceedings—at the state and administrative level—which allegedly "arise from the same basic nucleus of operative fact" as the present complaint,[2] to wit:

1) an administrative complaint before the Office of Monopolistic Affairs of the Puerto Rico Department of Justice, pursuant to Puerto Rico law ("OMA complaint"); [3]

2) an administrative complaint before the Office of the Commissioner of Financial Institutions ("OCFI complaint"). The OCFI complaint sought a ruling declaring that Banco Popular's activities were in violation of Puerto Rico's banking, antitrust and business tort laws.[4]

3) an administrative claim before the AFICA (acronym based on the Spanish name for the agency "Administracion para el Financiamiento de Facilidades Industriales, Turisticas, Educativas, Medicas y de Control Ambiental")("AFICA Complaint"). The AFICA complaint

---

**2.** Alternatively, Banco Popular requests the Court to stay all further proceedings pending the resolution of the administrative and state claims. (Docket No. 10 at 17).

**3.** Claim No. QLM–03–0079. (Docket No. 11, Exhibit #2). Banco Popular informs the Court that "notwithstanding Ticket Center's efforts, the OMA has not taken any action

against [Banco Popular], and there are no indications that it will." (Docket No. 10 at 4).

**4.** Claim No. Q03–D–089. (Docket No. 11, Exhibit #3). Ticket Center filed a motion for voluntary dismissal on July 24th, 2003, which was granted by OCFI by order of July 30th, 2003. (Docket No. 10 at 4).

particularly challenges the award to TicketPop of a bid involving electronic ticketing services for the new José Miguel Agrelot Coliseum.[5]

4) counterclaims filed in a state court proceeding ("state court complaint")[6]; and

5) an administrative complaint with the Federal Reserve Board ("FRB complaint"). Ticket Center claims that Banco Popular alleged anticompetitive behavior violates federal banking laws and the FRB implementing regulations. (Docket No. 11, Exhibit # 7).[7]

In essence, Banco Popular calls for the Court to abstain from entertaining a controversy which is, allegedly, a matter of state law, and which is being properly attended to by the aforementioned Puerto Rico state courts and agencies.

Ticket Center counters that none of the adjudicative proceedings outlined in Banco Popular's motion "present the basic claims included in this case, nor afford a solution to the main facts and circumstances subject of the captioned case." (Docket No. 20 at 2). Particularly, Ticket Center avers that "no facts and allegations sustaining a Bank Holding Company Act claim[...] has ever been raised before, nor one based on Section 1 of the Sherman Antitrust Act." (Docket No. 20 at 2, n. 1). Furthermore, Ticket Center sustains that only two judicial proceedings and the administrative complaint before the FRB are currently

pending, and that Ticket Center seeks relief pursuant to the federal antitrust statutes in none of them. (Docket No. 20 at 3–4).

## STANDARD OF REVIEW

### 1. *Younger Abstention Standard*

Under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746 (1971), and its progeny, federal courts shall not grant relief that interferes with pending state criminal prosecutions, or with pending state civil proceedings that implicate important state interests. *See New Orleans Public Service, Inc. v. Council of City of New Orleans ("NOPSI"),* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989); *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). The *Younger* abstention also applies to quasi-judicial administrative proceedings that implicate important state interests, so long as there is an adequate opportunity to litigate federal claims either in the administrative proceeding or in a state court judicial review proceeding. *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).

*Younger* abstention is based on the dual principles of equity and comity. *Younger,* 401 U.S. at 54, 91 S.Ct. 746. The equitable basis dictates that federal courts should refrain from taking action when there is an

---

**5.** AFICA ruled in Ticketpop's favor. Ticket Center filed an appeal with the Puerto Rico Court of Appeals, No. KLRA–2004–00243, which was dismissed. (Docket No. 11, Exhibits # 4 and 5). Ticket Center filed a motion for reconsideration which, at the time of Banco Popular filing its motion for abstention, was pending resolution. (Docket No. 10 at 4).

**6.** Banco Popular filed a tort suit against Ticket Center in the Puerto Rico Court of First Instance, stating claims for libel, slander, and unfair competition. Civil Case Num. KDP–

2004–0523(804) (Docket No. 11, Exhibit # 6). Ticket Center's counterclaim alleged breach of contract, unfair competition, violations of commonwealth and federal banking laws, libel and slander. (Docket No. 11, Exhibit # 8).

**7.** After a letter from the FRB to Ticketpop dated February 13th, 2003, and a letter from Ticket Center to the FRB dated April 10th, 2003, requesting information on the status of the claim, the FRB has taken no action on the complaint. (Docket No. 10 at 5).

adequate remedy at law and denial will not result in irreparable injury, while comity commands the proper respect for state courts, based on separation of powers principles. *See Guillemard–Gionorio v. Contreras Gomez,* 301 F.Supp.2d 122, 128 (D.P.R.2004); *El Dia, Inc. v. Rossello,* 30 F.Supp.2d 160, 176 (D.P.R.1998).

In order for the Court to abstain under *Younger,* three criteria must be met: 1) there must be ongoing state proceedings that are judicial in nature; 2) the state proceedings must implicate important state interests; 3) the state proceedings must afford an adequate opportunity to raise the constitutional challenges. *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). In order for a proceeding to qualify as an ongoing state proceeding for purposes of *Younger,* it must be judicial in nature. *NOPSI,* 491 U.S at 369–71, 109 S.Ct. 2506.

■ As exceptions to the rule of *Younger,* federal courts should not abstain where the state proceedings are undertaken in bad faith or other extraordinary circumstances are involved or a patently unconstitutional statute is at issue. *Younger,* 401 U.S. at 54, 91 S.Ct. 746.

### 2. *Burford Abstention Standard*

■ Under the abstention doctrine established in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies when: 1) there are difficult policy problems of substantial public import whose importance transcends the result in the case then at bar; or 2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial state concern. *NOPSI,* 491 U.S. at 361, 109 S.Ct. 2506; *Alabama Public Service Commission v. Southern Railway,* 341 U.S. 341, 347–348, 71 S.Ct. 762, 95 L.Ed. 1002 (1951).

■ After *NOPSI, Burford* applies only in narrowly circumscribed situations where deference to a state's administrative processes for the determination of complex, policy-laden state-law issues would serve a significant local interest and would render federal court review inappropriate. *Fragoso v. Lopez,* 991 F.2d 878, 882 (1st Cir. 1993) (quoting *NOPSI,* 491 U.S. at 359, 109 S.Ct. 2506). That is, "abstention will be the exception, not the rule." *Id.* The power to dismiss recognized in *Burford* represents an "extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 728, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

### 3. *Colorado River Abstention Standard*

■ Pursuant to the abstention doctrine set forth in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), a federal court may abstain when there is a parallel proceeding pending in state court. The decision to dismiss or stay proceedings in light of the parallel litigation is necessarily left to the Court's discretion. *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 19, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *KPS & Associates, Inc. v. Designs By FMC, Inc.,* 318 F.3d 1 (1st Cir.2003). The exercise of that discretion, however, is greatly constrained by what the Supreme Court has labeled an "exceptional circumstances test." *Moses H. Cone,* 460 U.S. at 19, 103 S.Ct. 927.[8]

---

8. In *Villa Marina Yacht Sales, Inc. v. Hatteras*    *Yachts Sales, Inc.,* 915 F.2d 7 (1st Cir.1990),

■ Pursuant to this test, "there must be some extraordinary circumstances for a federal court to shrink from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236; *Currie v. Group Insurance Commission*, 290 F.3d 1, 10 (1st Cir.2002). Always considering the "heavy presumption favoring the exercise of jurisdiction," *Villa Marina*, 915 F.2d at 13, the Court may consider: 1) whether either court has assumed jurisdiction over a *res;* 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which the forums obtained jurisdiction; 5) whether state or federal law controls; 6) the adequacy of the state forum to protect the parties' interests; and 7)the vexatious or contrived nature of the federal claim; 8) respect for the principles underlying removal jurisdiction. *Burns v. Watler*, 931 F.2d 140, 146 (1st Cir.1991). The list is by no means exhaustive, nor is any one factor necessarily determinative. *Villa Marina*, 915 F.2d at 12. Rather, "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Id., Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236.

## DISCUSSION

■ Banco Popular argues that abstention under any of the three doctrines is appropriate because the issues raised in the present complaint duplicate those being litigated at the state and administrative level, and because its subject matter is of a significant local interest. The Court disagrees.

The federal district courts have exclusive jurisdiction over private federal anti-trust cases, and remedies for violations of the federal antitrust laws may not be pursued in state courts. *See* § 4 of the Clayton Act, 15 U.S.C. § 15; *Freeman v. Bee Machine Co.*, 319 U.S. 448, 451–52, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943); *General Inv. Co. v. Lake Shore & Michigan Southern Railway Co.*, 260 U.S. 261, 286–87, 43 S.Ct. 106, 67 L.Ed. 244 (1922). Thus, federal district courts do not have discretion to abstain from deciding federal antitrust issues pending resolution of a state suit between the same parties and involving the same transactions.

In *Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59 (2nd Cir. 1986), the Second Circuit entertained an analogous controversy and reached a similar conclusion. There, various movie theater corporations brought an action in federal court against a provider of concession services, claiming violations of federal and state antitrust laws, and state usury laws. The United States Court for the Eastern District of New York dismissed the action without prejudice, in favor of a previously instituted state action against the movie theater corporations for an alleged breach of a concession lease agreement. The Second Circuit reversed and held that the district court should not have abstained in favor of the state action, inasmuch as certain claims sought antitrust relief available only in federal court. In so deciding, the Second Circuit noted that:

> [a]bstention is clearly improper when a federal suit alleges claims within the exclusive jurisdiction of the federal courts . . . Absent broad state court jurisdiction that would enable the state court to dispose of the entire matter, including the issues before the federal court, abstention could hardly be justified on

the Court of Appeals for the First Circuit held that the district court erred in using "good cause" rather than exceptional circumstances

standard in declining to exercise its jurisdiction because of parallel proceedings in the Puerto Rico state courts.

grounds of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation. Indeed, abstention would run counter to Congress' determination, reflected in grants of exclusive federal jurisdiction, that federal courts should be the primary fora for handling such claims. The grant of such jurisdiction could be seriously hampered if federal courts exercised discretionary power to await the outcome of related state court proceedings.

*Id.*, at 62–63.

■ The Court finds that the same reasoning applies here. It is undisputed that the relief sought by Ticket Center pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, is the exclusive province of the federal courts. That is, even though state courts may properly consider federal antitrust claims raised as defenses in a state court action, *Hathorn v. Lovorn,* 457 U.S. 255, 266 n. 18, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982), they may not grant affirmative relief based on claims for which federal jurisdiction is exclusive. *Lake Shore & Michigan Southern Railway Co.,* 260 U.S. at 286–87, 43 S.Ct. 106; *Andrea Theatres,* 787 F.2d at 63. Therefore, even assuming, as Banco Popular suggests, that all the pending state and administrative proceedings somehow deal with exactly the same claims and issues brought in the present complaint, the prevailing party in those proceedings would still have to return to federal court to seek affirmative relief. Abstention under such circumstances would simply be unpractical.

■ In addition, although federal court jurisdiction is not exclusive for claims brought pursuant to Section 106(e) of the Bank Holding Company Act, *Diversified Foods, Inc. v. First National Bank of Boston,* 985 F.2d 27 (1st Cir.1993), the Court finds that convenience and sound judicial administration counsel against abstaining from hearing the claim brought under said statute, inasmuch as it arises from the same set of facts charged as Sherman and Clayton Acts violations, and the Court would be applying similar legal principles to all claims.[9] Hence, comprehensive disposition of litigation is advanced by the Court entertaining Ticket Center's Complaint in its entirety.

In sum, Banco Popular proves none of the narrow and extraordinary circumstances which would lead the Court to abstain from exercising jurisdiction. Abstention under either *Younger, Burford* or *Colorado River* is thus inappropriate in the present case.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Banco Popular's Motion to Dismiss Based on Abstention.

IT IS SO ORDERED.

---

**9.** The Bank Holding Company Act purports "to apply general principles of Sherman Antitrust Act prohibiting anticompetitive tying arrangements specifically to field of commercial banking." *Kenty v. Bank One, Columbus,* N.A., 92 F.3d 384, 394 (6th Cir.1996); *see also B.C. Recreational Industries v. First National Bank of Boston,* 639 F.2d 828 (1st Cir. 1981).